### Charles Becker and Bernhard Yoch, Receivers, v. A. J. Vandegrift.

1. CONTRACTS—*Compensation Fixed by Letter.*—When one of the parties to a contract has, by his letter to the other, fixed the measure of the compensation to be made, such letter is proper to be considered in determining the amount due from such party.

**Intervening Petition for Mechanic's Lien.**—Error to the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Submitted at the August term, 1894. Affirmed. Opinion filed March 23, 1895.

DILL & SCHAEFER, attorneys for plaintiffs in error.

TURNER & HOLDER, attorneys for defendant in error.

MR. PRESIDING JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

At the April term, 1893, of the Circuit Court of St. Clair County, there was pending in that court a bill in chancery for the appointment of a receiver and for other relief, in

which Fielding W. Oliver was complainant, and the Belle-
ville Steel Company was defendant. By leave of court,
Andrew J. Vandegrift, defendant in error, filed an inter-
vening petition in said cause, on June 30, 1893, whereby he
sought to enforce a mechanic's lien against the receivers
of the Belleville Steel Company. Answers to the interven-
ing petition were filed by the Belleville Steel Company and
by the plaintiffs in error and the proceeding was heard by
the court upon oral and documentary evidence. A decree
was rendered in Vandegrift's favor for $484.53. Plaintiffs
in error bring the record to this court and insist that the
decree should be reversed. The only question presented for
consideration by the argument of plaintiffs in error relates
to the sufficiency of the evidence to show that they are in-
debted to Vandegrift in the sum of $484.53, or in any other
sum.

The findings of the decree are substantially as follows:
That on August 17, 1892, Vandegrift and the Belleville
Steel Company entered into a written contract, whereby
Vandegrift agreed to make the necessary changes in the
22x30 Smith & Beggs piston valve engine, in a certain
mill of the Belleville Steel Company, for the successful
application of his late improved automatic cut-off piston
valve and valve gear, and to furnish and apply the same, in
complete running order, to said engine, and to guarantee a
satisfactory running motion and as good economy as had
been attained by the application of the same to the Tudor
Iron Works; that the consideration to be paid Vandegrift
for said appliances and attachments was to be the value of
the fuel saved thereby for three hundred running days, of
twenty-four hours each, payment thereof to be made
monthly; that the Belleville Steel Company was to note the
number of days run in each month, and to continue said
payments until the three hundred days had been completed;
that the amount saved was to be determined by running
tests made before and after the application of said attach-
ments to the engine, such tests to be continued for one
week in each instance, under the same conditions; that in
each test the amount of fuel consumed and of the tonnage

turned out was to be recorded; that Vandegrift was to keep said attachments in complete repair for a term of two years after they were applied to the engine; that in pursuance of said contract, Vandegrift made the changes and applied the attachments on or about September 1, 1892; that before this was done, however, a test was made, as was provided for in said contract; that afterward, in March, 1893, another test was made, this time with the said automatic apparatus attached to the engine; that the Belleville Steel Company kept a record of said tests, and adopted the same as a basis upon which to fix Vandegrift's compensation; that the said tests showed a saving in fuel of $5.21 per day; that on April 26, 1893, by its letter to Vandegrift, the Belleville Steel Company promised to pay Vandegrift for said appliances, in monthly payments, the sum of $5.21 for each running day for a period of three hundred days, beginning with March 1, 1893; that after March 1, 1893, and prior to June 30, 1893, the date of the filing of Vandegrift's claim, the Belleville Steel Company operated said engine and mill for ninety-three days; and that no payment under the contract has been made to Vandegrift by the Belleville Steel Company or by the plaintiffs in error.

A careful examination of the record satisfies us that the chancellor was justified in finding the facts to be substantially as set forth and detailed in the decree.

An effort was made to show that the letter dated April 26, 1893 (which was in answer to a letter from defendant in error dated April 15, 1893, containing a comparative statement of the two tests made), was given by the manager of the Belleville Steel Company for the sole purpose of showing that Vandegrift's appliances were in use in that company's mill, and of thereby enabling said Vandegrift to contract for the use of the same appliances by other companies. The evidence upon this question was conflicting and the chancellor was certainly justified in holding that this letter was made with a more serious intent than that of enabling Vandegrift to impose upon ignorant and unsuspecting parties what plaintiffs in error claim to be a valueless contrivance.

But the letter in question speaks for itself. It is as follows: "Comparing the tests made on our 12-inch mill engine before and after the application of your automatic cut-off, we note a saving of coal to amount $5.21 per day, which by terms of contract is payable to you monthly, covering a period of 300 running days, as per understanding of yesterday. March 1, 1893, is the time these payments date from. As then explained to you, we can not render you a voucher until May 10th, as that is the next nearest date on which we render vouchers on our treasurer for bills on hand."

It is difficult to determine whether the words "as per understanding of yesterday" are intended to qualify what precedes or what follows them. But this matter is not very material. Whether the "understanding of yesterday" was as to the amount saved daily and the number of running days to be paid for, or as to the time from which the payments were to be dated, a compromise of the differences between the parties, based upon a sufficient consideration, is shown by this letter, when considered in connection with the letter of defendant in error above mentioned, in which the latter agrees to accept $28.68 as the saving for five and a half days. These two letters amounted to a contract between the parties, which the chancellor very properly enforced.

If there was not a "good, satisfactory running motion," as guaranteed by the defendant in error, the Belleville Steel Company should not have made the compromise shown by its said letter, which is dated nearly eight months after the appliances of defendant in error had been in use under the original contract.

This compromise also dispenses with the necessity of proof that as "good economy" was attained at the Belleville Steel Company's mill as by the use of the same appliance at the Tudor Iron Works, or that the attachments had been kept in repair as required by the original contract.

The decree of the Circuit Court is supported by the evidence, and it is therefore affirmed.